Rockingham, }
Dec. 3, 1929. }

JOHN GONET, *by his father and next friend,*

*v.*

THE PORTSMOUTH POWER COMPANY.

*William H. Sleeper* and *John W. Perkins* (*Mr. Perkins* orally), for the plaintiff.

*Hughes & Burns,* (*Mr. Burns* orally), for the defendant.

BRANCH, J.   The plaintiff claimed that while he was riding with his father upon a horse-drawn milk wagon, the horse was frightened by a motor truck of the defendant and ran away.   As a result, the plaintiff was thrown from the wagon and sustained personal injuries from which recovery is sought in the present action.

There was evidence from which the following facts might be found. Just prior to the accident the plaintiff's father had stopped to water the horse at a trough located at the intersection of two streets in the town of Newmarket.   While the team was standing beside the watering trough, the defendant's truck came over a bridge about 200 feet away.   This truck was hauling two poles 35 feet long, the rear ends of which were carried on a small two wheeled vehicle known as a "dinky."   As they came over the bridge, the truck and the dinky made considerable noise which frightened the plaintiff's horse.   The horse "lifted up his ears and kind of shook."   The plaintiff's father "held onto the horse full force" until the truck passed the team. Then they "went together a few steps" after which the team overturned and pinned the plaintiff under it.   The horse freed himself and ran off.   The view from the bridge to the watering trough was unobstructed.

If the jury found the foregoing facts to be established, they might further conclude that the driver of the defendant's truck was negli-

gent in continuing on his course without seeing or heeding the frightened condition of the horse. It is urged by the defendant that the only indications of fright mentioned by the plaintiff's father were that the horse "lifted up his ears and kind of shook" and that the truck driver could not be found negligent for failing to observe these signs. The answer is that there is nothing in the record which compels the conclusion that the witness undertook to enumerate all the evidences of fright which the horse showed, while other evidence in the case drew the picture of a man exerting all his strength to control a horse which was trying to run away and at the same time holding onto his infant son. The jury might have found that the driver of the defendant's truck continued to approach an obviously frightened horse without slackening his speed, in violation both of the command of the statute (P. L., *c.* 103, *s.* 9) and the dictates of due care. The case should have been submitted to the jury.

*New trial.*

All concurred.